## Christy et al., Appellants, *v.* Christy et al.

162 485
s176 427
162 485
s187 188

*Will—Construction—Devise—Mineral lands.*

Testator who owned land underlaid with coal gave by his will to his daughter Agnes " the farm on which she now resides which is to be her share of my estate," and immediately added these words " should the coal be opened on said land or sold in a body, she my daughter Agnes to have equal share with the other heirs." To his son Gallitzin he gave in like manner the farm on which he lived, adding, " the mineral right to be reserved. He to pay out of his share of mineral right his note and store account due F. J. Christy." To his other six children he gave " an equal share with the other heirs of my whole estate." *Held,* that these six children should share equally in the surface, excluding the farms devised to Agnes and Gallitzin, and that all of the eight children should share equally in the minerals under the whole of testator's lands.

*Trust and trustee—Purchase of title—Laches—Account.*

Where lands belonging to heirs are purchased in trust for the heirs by one of them, under an agreement that they should pay their share of the purchase money, the trust will not be defeated by delay of several years to pay the purchase money when no demand has been made for it, or by neglect to enforce the trust by an account.

Argued April 16, 1894. Appeal, No. 436, Jan. T., 1893, by plaintiffs, Gallitzin A. Christy et al., from decree of C. P. Blair Co., No. 109, in bill in equity against Dr. John T. Christy et al. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Bill for an account. Before LANDIS, P. J.

The bill, filed May 2, 1884, alleged that Francis X. Christy, late of Gallitzin township, Cambria county, died on Sept. 6, 1876, seized, inter alia, of a tract of land in Gallitzin township, Cambria county, containing 200 acres, and also another tract of land warranted in the name of Catharine Hester, containing 415 acres, more or less.

That said Francis X. Christy left to survive him eight children, of whom Gallitzin Christy, one of the plaintiffs, was one ; Mrs. Agnes Burke, who died in 1883, leaving the other plaintiffs as her heirs, was another, and Dr. John T. Christy, one of the defendants, was another.

That said plaintiffs under the will of said Francis X. Christy

are entitled to two eighths of the coal under said two tracts of land. That "on the 2d day of January, 1878, Francis J. Christy, executor of said will, presented his petition to the orphans' court of Cambria county, praying leave to sell all the lands of the testator for payment of debts, and by virtue of an order of said court thereupon made," he sold Nov. 6, 1878, to Dr. John T. Christy the said two tracts, "and the said John T. Christy pretends to hold the title" to the same absolutely. That for some reason not disclosed in the returns of sale it was agreed, between said executor and Dr. John T. Christy, in writing, that if Dr. Christy should purchase said lands he would continue to hold the same in trust for all the heirs of Francis X. Christy, deceased. "That complainants have not the said agreement in their custody and when produced they pray leave to more fully charge upon the same." That Dr. John T. Christy had leased said lands to the other defendants or some of them.

The bill prayed relief : (1) That Dr. John T. Christy be declared a trustee. (2) That the leases be declared void or that defendants account for proceeds from said lands.

The answer filed by Dr. John T. Christy averred : That Francis X. Christy died seized of but the one undivided half part of the 200 acre tract, Dr. John T. Christy having purchased the other half from his said father in his lifetime. That Dr. John T. Christy purchased the one undivided half of said 200 acres and also the Catharine Hester tract, not in trust for plaintiffs, but for a full price for himself, and that plaintiffs are entitled to no account. That portions of said tracts were incumbered with leases to the Cambria Iron Co. and the Kittanning Coal Co.

Testator's will, dated July 26, 1876, was as follows :

"First, I give and bequeath to my beloved wife, Elizabeth Christy, one hundred and twenty-five dollars yearly during her natural life (or as long as she remains my widow) ; also, to my wife Elizabeth one cow, one bureau, one bed and bedding, one table, her choice of one set of chairs, one cupboard.

"Item. I give and bequeath to my daughter Agnes the farm on which she now lives, which is to be her share of my estate, and should the coal be opened on said land or sold in a body she, my daughter Agnes, to have equal share with the other heirs.

"Item. I give and bequeath to my daughter Lucy Ann an equal share of my whole estate, deducting from her share the sum of six hundred and ninety-six dollars which she has already received.

"Item. I give and bequeath to my daughter Sarah an equal share of my whole estate with the other heirs, deducting from her share the sum of three hundred and thirty-one dollars, which she has already received.

"Item. I give and bequeath to my son John T. Christy an equal share with the other heirs of my whole estate deducting from his share the sum of one thousand dollars, which he has already received in schooling.

"Item. I give and bequeath to my son Henry an equal share with the other heirs in my whole estate deducting from his share the sum of one thousand dollars, the sum he has already received in schooling. I also will that my son Henry's store account with F. J. Christy be paid out of his share of my estate.

"Item. I give and bequeath to my son Gallitzin fifty acres of land, including the improvements, where he now lives. The mineral right is reserved. He is to pay out of his share of mineral right his note and store account due F. J. Christy.

"Item. I give and bequeath to my son Josiah an equal share with the other heirs of my whole estate, and out of his share there must be paid a note in bank, with my signature attached, of four hundred and ten dollars; also, his note and store account due F. J. Christy. I also will that after said note and store account be paid out of my son Josiah's share of my estate, the balance remaining I will to his wife and children.

"Item. I give and bequeath to my son Francis an equal share with the other heirs of my whole estate. I also will that when the unsettled account between my son Francis and myself be settled that he pay the balance due me to my son John T. Christy."

Francis J. Christy was appointed sole executor.

The case was referred to H. M. Baldridge, Esq., as master, whose findings of facts are recapitulated as follows:

"That F. J. Christy, as executor of F. X. Christy, deceased, in pursuance of an order from the orphans' court of Cambria county, exposed to public sale on Nov. 2, 1878, the undivided

one half of the 200 acres, and the whole of the tract containing
415 acres, more or less, known as the Catharine Hester, being
two of the tracts mentioned in the bill.    That Dr. J. T. Christy
was the highest and best bidder, but that the executor was not
satisfied to knock the property down at his bid unless Dr.
Christy would enter into a written agreement that he ' would
hold the same in trust for all the heirs and devisees of Francis
X. Christy to the extent to which said heirs and devisees, or
any of them, might be entitled to participate in said tracts had
they remained unsold and unincumbered by the debts of said
decedent, provided they, or any of them, should pay their
share of said purchase money.'    That said written agreement
was then entered into to that effect, but that it was not done
with any fraudulent purpose, nor to interfere in any way with
other bidders, but to enable any of the heirs or devisees, who
might wish, to join in the purchase of the property—the execu-
tor considering the property worth more money.    That the ex-
ecutor and the doctor at that time did not suppose Mrs. Burke
or Gallitzin Christy were entitled to any share in these lands
under their father's will, and therefore did not consider they
were parties to the agreement.    That by said agreement it was
a condition precedent to any of the heirs or devisees acquiring
any interest in the purchase that they should pay their pro-
portionate share of the purchase money.    That no time having
been fixed in the agreement for the payment of such propor-
tionate share of the purchase money, it was necessary for any
of the heirs or devisees desiring to avail themselves of the ben-
efit of the agreement to pay it within a reasonable time.    That
as the sale was in November, 1878, confirmed in Febuary, 1879,
and deed delivered in May, 1879, and no tender was ever made
by either of the complainants from the time of the sale down
to filing of this bill in May, 1884, it would be such laches or
evidence of an abandonment of any intention to claim under
the agreement as would preclude the relief prayed for."

The master also reported :

" The following statement from the records of the orphans'
court of Cambria county will give an idea of the extent of the
real estate of Francis X. Christy, its value, etc., so far as it
might aid in the interpretation of his will.    After the sales made
by the executor for the payment of the debts, proceedings in

partition were had, and owing to irregularities, litigation, etc., there was a third pluries writ before a confirmation was had of the partition and valuation.   By the appraisement as confirmed in 1886, his lands were valued as follows: No. 1: 123 a. 144 p., surface valued at $2,086.22; coal valued at $13,462.99; No. 2: 44 a. 155 p., surface valued at $370.97; coal valued at $4,946.56; No. 3: 44 a. 57 p., surface, $553.77; No. 4: 95 a. 42 p., (devised to Mrs. Burke,) coal value $11,083.65; surface not appraised. No. 5: 100 acres, coal valued at $14,653.45; surface not appraised.   No. 6: 56 a. 76 p. (devised to Gallitzin), coal value $6,965.06.

"Dr. Christy accepted purpart No. 1 at appraisement, and Joseph Gray was appointed trustee to sell remaining purparts, and they were sold in 1887, at the following prices: No. 1 coal right in 123 a. 144 p. at $62.00 per a.; No. 2: 44 a. 156 p., surface, $9.00 per a., coal, $32.00 per a.; No. 3: 44 a. 57 p., surface, $10.50 per a., coal, $33.50 per a.; No. 4: 95 a. 42 p. (Mrs. Burke's), coal, $25.00 per a.; No. 5: 100 a., coal, $40.00 per a.; No. 6: 56 a. 76 p. (Gallitzin's), coal, $8.00 per a.

"It will be observed there is a wide difference between the appraised value of the mineral right and the price at which it was sold.   There was no proof before the master of the actual value of either Mrs. Burke's farm or Gallitzin's mill property. The report of Alvin Evans, Esq., auditor appointed by the orphans' court of Cambria county, shows that the share of each of the heirs in the whole estate, surface and mineral, after payment of debts, was on first report, $15.65; on second report $1,717.82; making amount received by each $1,733.47.   And the auditor in his distribution appropriates this amount to both Mrs. Burke and Gallitzin Christy, he construing the will of F. X. Christy that if the coal was opened on their lands or sold in a body then they were to have an equal share with all the other heirs in his entire estate, surface and mineral, in addition to the property devised to them.   These reports were confirmed absolutely by the orphans' court of Cambria county, the first, March 18, 1883, and the second, May 6, 1889, and complainants' counsel now contend that the decree of the said court confirming these reports is res adjudicata on the question as to the share of Mrs. Burke and Gallitzin under the will.   Dr. Christy, in his testimony, states that he did not know the auditor

had made the appropriation until it was too late to file excep-
tions; that when he had ascertained it he had his counsel, Mr.
Reade, file exceptions, but the court would not consider the
matter because filed too late.   However the fact may be, and
whether the question was considered by the court or not, the
decree unappealed from would be conclusive so far as the dis-
tribution of that fund was concerned, but in our opinion it was
not such res adjudicata of the question as would prevent its being
considered in this issue.   It would naturally be considered, and
have its influence on a master or court, if the question had re-
ceived due consideration, but that it would not be conclusive,
we think is ruled by Kline's Estate, 86 Pa. 363, where it is
held that the same question may be revived in each successive
distribution, and by Gunther's Appeal, 4 W. N. 41, where it
is ruled that it is only conclusive as to the funds then distrib-
uted."

The master recommended a decree dismissing the bill on the
ground of laches, citing: Speidell v. Henrici, 15 Fed. R. 753;
Humes v. Beale, 17 Wal. 336;   Kille v. Reading Iron Works,
47 Leg. Int. 464.

Exceptions to the master's report were dismissed by the court,
and a decree entered dismissing the bill, in an opinion by
LANDIS, P. J.

*Error assigned* was above decree.

*George B. Orlady* and *W. H. Sechler*, *Martin Bell* and *John
D. Blair* with them, for appellants, cited: 1 Jarman on Wills,
p. 784; Cheetham v. Muhlenberg, 133 Pa. 321; McDonald v.
Dunbar, 20 W. N. 559; Weber's Ap., 17 Pa. 474; Malone v.
Dobbins, 23 Pa. 296; O'Hara on Wills, 40; Story's Equity,
§ 321; Adams' Equity, 181; Aultman's Ap., 98 Pa. 517; Pe-
ters v. Kerper, 5 W. N. 524; Bunting's Est., 23 W. N. 159;
Beck v. Ulrich, 16 Pa. 503; Keller v. Auble, 58 Pa. 411; Long
v. Perdue, 83 Pa. 218; Ashhurst's Ap., 60 Pa. 315; Waterman
v. Mfg. Co., 12 Atl. R. 240; Culver v. Pierson, 15 Atl. R. 269;
Aultman's Ap., 98 Pa. 500; Doggett v. Emerson, 3 Story, 700.

*Daniel J. Neff*, *J. D. Hicks* with him, for appellees, cited:
Ray's Est., 31 Pitts. L. J. 72; Kline's Ap., 86 Pa. 363; Guen-

ther's Ap., 4 W. N. 41; 3 Jarman on Wills, 706; Landis v. R. R., 133 Pa. 579; Yeager & Grim's Ap., 100 Pa. 88; Evans' Ap., 81 Pa. 278; Kille v. Iron Works, 47 Leg. Int. 464; Speidell v. Henrici, 15 Fed. R. 753; Humes v. Beale, 17 Wal. 336; Mellish's Est., 1 Pars. Eq. 482.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894:

This case depends on the construction of the will of Francis X. Christy, the general scheme of which is somewhat obscure. He left to survive him a wife and eight children. He was the owner of a large body of unimproved land near the town of Gallitzin in Blair county which was chiefly valuable for the coal measures known to underlie it. In preparing his will he was evidently inops consilii, and made use of words that, however clear they may have seemed to him, were not well chosen. He seems to have considered his lands as having a surface value, and a mineral value, that should be estimated separately, and divided separately among his children. He made provision for his widow with which she appears to have been satisfied, and then undertook to divide his real estate equally among his eight children. But Agnes and Gallitzin, two of his children, were living on parts of the land which were improved, and the task which the testator proposed for himself was to make an equal division of his estate and yet leave Agnes and Gallitzin in possession of their respective homes. In order to do this he gave to Agnes " the farm on which she now resides which is to be her share of my estate," and immediately added these words, " should the coal be opened on said land or sold in a body, she, my daughter Agnes, to have equal share with the other heirs."

Taken altogether this provision means that the farm was to be in full of her share of the surface, but that she should be entitled to her share of the mineral estate in whatever manner it might be turned into money. To Gallitzin he gave in like manner the farm on which he lived, adding, " the mineral right is reserved. He to pay out of his share of mineral right his note and store account due F. J. Christy." This gift of the farm, like that to Agnes, was intended to be in full of his share of the surface. To show that it was the surface only that was to pass under this devise he reserved the mineral

right in express words. But in order to secure equality of in·
terest to each and all of his children he gave to Gallitzin by
implication an equal share in the mineral estate by the words
directing what should be charged up against it. Now Agnes
and Gallitzin are provided for. Each has received what is
treated as an equal one eighth of the surface, and an equal
share with the others, or an equal one eighth, of the mineral
estate. What remained was to make sure that the other six
should receive also their full shares; and for this purpose he
gave to each " an equal share with the other heirs of my whole
estate." By this he meant that these six should share equally
in the surface, excluding the farms already disposed of, and
equally with the others in the mineral estate. This divided
the surface into eight parts, and the mineral estate into eight
parts. Agnes and Gallitzin took each one eighth part of the
surface in severalty. The other six took the remainder of the
surface in common. The eight took each an undivided one
eighth part of the mineral estate as tenant in common with
his or her brothers and sisters.

It will be noticed that in the devise to Agnes the reservation
of the mineral right appears by implication, while the gift to
her of her equal share in its proceeds is in express words. On
the other hand in the devise to Gallitzin the reservation is in
express words and the gift of an equal share in the minerals is
to be gathered only by implication. There is however no other
construction that can be given to either of these devises that
will not do violence to the intention of the testator, which so
clearly appears throughout the will, to treat his children alike,
and divide his estate equally among them. When the prop-
erty was sold to J. T. Christy, by the executor, and he executed a
declaration of trust stating the manner in which he was to hold
the title acquired by him, and that the sale was not to change
the interest of any one interested in it under his father's will,
the sale became merely a mode of enabling the purchaser to
make title to a vendee or lessee, as trustee for all the parties
in interest. If he advanced money for them it does not appear
that he ever asked for repayment. He now has, however,
money in his hands sufficient to fully reimburse himself, and
leave a balance due to each of the several parties in interest.
He is asked to render an account of his receipts as trustee, and

his disbursements; and no reason has yet been suggested why this should not be done.   The interest of each of his brothers and sisters in the proceeds of " the mineral right " is an equal one eighth and an account can be easily stated.

The decree of the court below is reversed and the record remitted that an account may be taken as prayed for, and stated on the basis indicated in this opinion.   So much of the fund as arises from the lease or sale of the surface is to be divided into six equal parts from which Agnes and Gallitzin are excluded.   So much of it as arises from royalty upon, or purchase money of, coal is to be divided into eight equal parts, one of which is to be awarded to each of the testator's children, or the legal representative of such child or children as may now be deceased.