Gallitzin A. Christy, Francis N. Burk, B. W. Burk, Augustine Burk, Syrenius Burk, James Wagner, Jane Wagner, Hiram Smith and Daniel Burk, *v.* Francis M. Christy and Mary A. J. Christy, Executors of Dr. J. T. Christy, deceased (Appellants), James L. Mitchell, Thomas Monroe, John W. Gilchrist, W. W. Amsbry and The Gallitzin Coal & Coke Company.

*Vendor and vendee—Decedent's estates—Trusts and trustees—Orphans' court sale.*

A decedent in his lifetime sold to his son for a specified sum a one half interest in land. Thirteen years afterwards and after the death of decedent the land was sold by an order of the orphans' court to pay the decedent's debts. Prior to the orphans' court sale the son agreed in writing that if he should purchase the land at the sale he would hold it in trust for his father's heirs, but he expressly confined the trust to " the interest in said tracts of which my father died seized, reserving my own interest in said tracts which I had at or before the time of my father's death." Subsequently the son and the executor of the decedent agreed to submit to a referee the question as to how much was owing by the son on account of the purchase money of his one half interest in the land. An award was made, and the son paid the amount due. *Held*, (1) that under the facts of the case there was no abandonment by the son of the one-half interest which he had purchased from his father; (2) that the executor had power to submit to arbitration the question of the amount due by the son to his father's estate; (3) that the heirs of the decedent were cestuis que trust only as to a one half interest in the land bought by the son at the orphans' court sale.

Argued April 21, 1896. Appeal, No. 8, Jan. T., 1896, by defendants, Francis M. Christy and Mary A. J. Christy, executors, from decree of C. P. Blair Co., No.. 109, in equity. Before STERRETT C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for an account.

The case was tried before LYONS, P. J., of the forty-first judicial district, specially presiding, who filed the following opinion by which the facts appear :

The complainant's bill was filed May 3, 1884. The cause

was heard on bill, answer and proofs, and on the 23d day of February, 1893, the court dismissed the bill. An appeal was taken to the Supreme Court, and July 11, A. D. 1894, the decree of the court of common pleas was reversed and the record remitted that an account might be taken as prayed for and stated on the basis indicated in the opinion filed by the Supreme Court, 162 Pa. 485.

The taking of testimony in regard to the account was begun May 28, 1895, and the testimony closed June 27, 1895, and argument of counsel heard on the succeeding day.

Before proceeding to state the account I will dispose of the several disputed questions of fact and law raised at the hearing:

1. The defendants claimed that Dr. J. T. Christy, deceased, was the owner of the undivided one half of the two hundred acre tract of land mentioned and described in paragraph one (1) of complainants' bill, and should, therefore, only account for one half of the coal mined on said tract.

In support of this claim, defendants offered in evidence a certified copy of an agreement between Francis X. Christy and Dr. John T. Christy, dated December 23, 1865, and recorded in Cambria county, in deed book, volume 55, page 509, wherein Francis X. Christy "Bargains, sells and conveys unto the said Dr. J. T. Christy the undivided half of all the mineral right in and to the said tract of land," in consideration whereof the said Dr. J. T. Christy agreed " To pay to said Francis X. Christy the sum of Five Thousand Dollars, and it is understood that the amount which said Francis X. Christy owes said Dr. J. T. Christy shall be in part payment of said consideration, also the amount paid Connors for work. The said parties to this agreement agree to drive said drift until they strike a vein of coal, and they also agree to share the expenses and profits equally, and that neither of them shall make any charge for superintending the driving of said drift, and, if said Dr. John T. Christy furnishes more money than said Francis Christy in opening said drift, he shall be paid out of the first coal that shall be sold without interest or have it credited on the balance of purchase money."

The plaintiffs contend, 1. That the question of title was settled and adjudicated by the decree of the Supreme Court. 2. That Dr. J. T. Christy's executors cannot avail themselves

of said agreement because they have not shown performance of the same on the part of Dr. J. T. Christy, deceased.   3. That it is now too late for defendants to ask for a specific performance of the contract.

In the first paragraph of his answer to plaintiffs' bill, John T. Christy claimed to be the owner of the undivided one half of this tract of land, and in support of his claim gave in evidence this same article of agreement, upon which defendants now claim the one half of the coal mined on said tract.   No reference is made to this agreement in the opinion filed by the Supreme Court.   But the whole case was before the court, and the basis was indicated upon which this account should be taken. I am of opinion that the question of title was settled in that decision and that is now res adjudicata.   But if it was not, no decree for specific performance of this contract was ever asked by J. T. Christy.   No petition for that purpose was ever presented to the orphans' court of Cambria county, where the lands lie, and where Francis X. Christy lived at the time of his death, and where his will was probated.   No evidence was offered to show that J. T. Christy had performed his part of the contract. On the contrary, the plaintiffs' evidence shows that he had abandoned said agreement and refused to comply with and perform it on his part less than one year after it was entered into.

Francis X. Christy died in 1876.   This real estate was sold by order of the orphans' court of Cambria county for the payment of the debts of Francis X. Christy on the 2d day of November, 1878, by F. J. Christy, executor of Francis X. Christy, deceased, to J. T. Christy, and the sale was confirmed by the court on the 11th day of February, 1879, and a deed executed to him therefor.   The 15th section of the act of assembly approved February 24, 1834, Purdon, page 386, P. L. 75, provides a method for obtaining specific performance of contracts of decedents, in writing, for the sale and conveyance of real estate. John T. Christy did not pursue his remedy under this act of assembly, and the 13th section of the act of 21st of March, 1806, Purdon, 12th ed. page 77, plac. 5, enacts that "in all cases where a remedy is provided, or duly enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the direction of said acts shall be strictly pursued and no penalty shall be inflicted, or anything done agreeably to

the provisions of the common law in such cases further than shall be necessary for carrying such act or acts into effect." If Dr. J. T. Christy relied upon this agreement he should have petitioned the orphans' court for a decree of specific performance of the contract which has exclusive jurisdiction in cases of this kind: Myers v. Black, 17 Pa. 193; Cobb's Executors v Burns, 61 Pa. 278. This he should have done promptly and before the land was sold by the executor of Francis X. Christy, deceased. His executors cannot now set up this agreement and claim under it in this action.

Defendants also offered in evidence agreement between Francis X. Christy and J. T. Christy, dated January 23, 1875, recorded in Cambria county in deed book, vol. 80, page 6, in which Francis X. Christy agreed " to deed and convey the one undivided half of the Paul Stackhouse survey (laid on the Catharine Hester tract) except the Howel house and lot to J. T. Christy, his heirs or assigns, for the consideration that the said J. T. Christy . . . . shall pay all expenses and costs in the suit now pending between the Cambria Iron Company and Francis Christy for said Paul Stackhouse survey. The said J. T. Christy to take all risks of suit," and claim by virtue of said agreement the one half of the coal mined on this tract. What has been said in reference to the agreement of December 23, 1865, above, equally applies to this one, and this claim is not allowed.

The evidence shows however that J. T. Christy expended considerable sums of money in defense of the title of this land. As this expenditure enured to the benefit of plaintiffs as well as himself, he will be allowed a credit for the several sums of money so expended, with interest on each from the date of payment. He is entitled to be reimbursed for all moneys expended for the benefit of the trust: Beck v. Urich, 16 Pa. 499.

The defendants claim they should be allowed a credit for compensation of J. T. Christy for his services in managing the estate at the rate of $250 a year, and interest on said sum from the end of each year to July 12, 1895. Is he entitled to any compensation? John T. Christy purchased this land in November 2, 1878, and on that day, before the executor of Francis X. Christy made the sale, he entered into an agreement, in writing, that, if he should purchase the said real estate, he would

hold it in trust for all the heirs of Francis X. Christy, deceased. This was done because the executor refused to sell at the price bid unless he would thus agree. But as soon as he had got the deed he denied the trust, claimed to be the sole, legal and equitable owner of the land, and managed it himself and denied the right of his brothers and sisters to any interest or share in it, and that he had purchased in trust for them. They were compelled to resort to long, tedious, vexatious and expensive litigation to establish and secure their rights. Meanwhile he managed the estate as his own and converted all the proceeds of it to his own use, and when the Supreme Court finally decreed in favor of the plaintiffs and directed an account to be taken of the proceeds of the land he neglected and failed to exhibit an account of his receipts and expenditures. His conduct was far from being commendable. To allow him compensation for time and trouble in managing this estate, under the circumstances, would be to reward unfaithfulness and encourage deception and dishonesty. He who becomes a trustee, and when he has the trust estate in his possession, denies the trust and claims it as his own, and asserts his ownership to the entire exclusion of the cestui que trust, until after nine years of vexatious and expensive litigation their rights are established, should not be rewarded by allowing him compensation for time and trouble in the management of the estate. The authorities to sustain this view are numerous. I will refer only to the following: Berryhill's Administratrix's Appeal, 35 Pa. 245 ; Swartzlander's Accounts, 4 Watts, 77. An unfaithful trustee is entitled to no favor: Beck v. Urich, 16 Pa. 499. These services were not rendered at the request of the plaintiffs, either express or implied. The plaintiffs are not bound to pay for them, either in law or equity.

The evidence fails to show what amount of timber was cut on the land in dispute by Daniel A. Burk, if any. It is too vague and uncertain to charge him, and the same is true as to the timber alleged to have been cut and removed by Gallitzin A. Christy. It is evident that J. T. Christy paid some more taxes than his executors were able to prove, but that results from his failure to keep an account.

The court entered the following decree :

And now, July 30, 1895, it is ordered, adjudged and decreed

that F. M. Christy, executor, and Mary A. J. Christy, executrix, of Dr. J. T. Christy, deceased, pay to Gallitzin A. Christy the sum of six thousand one hundred and ninety-six dollars and forty-three cents ($6,196.43); and that they pay to B. W. Burk, Syrenius Burk, Jane Wagner and Matilda Smith, or their legal representatives, each the sum of seven hundred and ninety-eight dollars and forty-two cents ($798.42); and that they pay to Daniel Burk the sum of seven hundred and seventy dollars and eighty-two cents ($770.82); and that they pay to F. N. Burk the sum of six hundred and twenty-two dollars and seventy-four cents ($622.74); and that they pay to Demetrius A. Burk the sum of seven hundred and seventy-nine dollars and thirty-seven cents, and to Mrs. Ann Glass the sum of nine hundred and fifty-seven dollars and twenty-nine cents ($957.29), and further that they pay all the costs of this case.

*Error assigned* was above decree.

*Daniel J. Neff* and *Aug. S. Landis*, for appellants.—An estate under contract of sale is regarded as converted into personalty from the time of the contract, and, if the seller die before the election be exercised, the purchase money when paid will go to his executors as assets: Kerr v. Day, 14 Pa. 112; 3 Rhones O. C. sec. 92.

By the contract the purchaser is the owner of the premises to every intent and purpose in equity: Richter v. Selin, 8 S. & R. 439; Sutter v. Ling, 25 Pa. 467; Siter, James & Co.'s App., 26 Pa. 178; Ins. Co. v. Dunham, 117 Pa. 475; Lulay v. Barnes, 172 Pa. 348.

*John D. Blair*, with him *W. H. Sechler*, for appellees.—Even dormancy of the contract precludes the party from insisting on it.    To insure the assistance of a chancellor requires an observance of the contract in spirit and in truth: Ong v. Campbell, 6 Watts, 392.    If the conduct of the party seeking a specific performance of a contract be not perfectly conscientious, honorable and fair, relief will not be given: Henderson v. Hays, 2 Watts, 157.    Lapse of time and change of circumstance will induce a chancellor to refuse a decree of specific performance: Patterson v. Martz, 8 Watts, 374.

Equity will not decree specific performance if plaintiff has

failed to perform his share of the contract.   Specific execution is not of right but of grace: Datz v. Phillips, 26 W. N. C. 512; Freetly v. Barnhart, 51 Pa. 281; Friend v. Lamb, 152 Pa. 533.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

The learned judge below gave too broad an effect to our decision in this case when it was here before: 162 Pa. 485.   All that was then before the court and determined was the interpretation of the will of F. X. Christy, the persons who were entitled to be considered his "heirs" as to the surface of the land and the mineral rights, and their status by virtue of such heirship as cestuis que trust under the agreement of 1878 between F. J. Christy and Dr. J. T. Christy in regard to the latter's purchase of F. X. Christy's land.   In other words it settled the mode of distribution of F. X. Christy's estate, whatever it might be, but neither raised nor decided any question as to the extent of that estate in these lands.   That question is now before us.

The learned judge was of opinion that that had been decided adversely to appellants, but in addition to the ground of res adjudicata, he based his decree on the failure of Dr. Christy to perfect his title under his agreements with his father, F. X. Christy, by proceeding in the orphans' court after the latter's death to obtain a decree of specific performance.   He therefore held as matter of law that Dr. Christy had abandoned his agreements with his father and was not now entitled to enforce them, and he also inferentially found an abandonment as matter of fact.

This conclusion however overlooks the force of Dr. Christy's position in this litigation.   He was the owner of the legal title in fee and in possession, and this is a bill to declare him a trustee as to a part of the land.   To the validity of his legal title these plaintiffs at least could never object, for they claim under F. X. Christy, and Dr. Christy holds all of F. X. Christy's title by virtue of an orphans' court sale for payment of his debts.   That sale passed the title clear of all claim of the plaintiffs as heirs, and had the purchaser been a stranger would have passed it clear of Dr. Christy's claim not only as heir but as a prior purchaser by unrecorded articles of agreement.   But as Dr. Christy was himself the purchaser his previous equity was

preserved. It merged in his legal title and was protected by it. He had no need to go into the orphans' court for specific performance, for all that could have given him was F. X. Christy's title, and that he had already. His legal title was therefore beyond attack by any of the present parties.

The plaintiffs come into court on an equity arising solely under the agreement of November 2, 1878. By that Dr. Christy as the purchaser of the land which stood in his father's name recognized his father's interest and agreed to hold it in trust for his father's heirs. But he expressly confined the trust to " the interest in said tracts of which my father died seized, reserving my own interest in said tracts which I had at or before the time of my father's death." This agreement was made on the day of the orphans' court sale either just before, or just after the sale but before confirmation, and it is the foundation of the plaintiffs' rights. Without it, as already said, the purchaser, whether Dr. Christy or a stranger, would have taken the entire title of F. X. Christy, indefeasible by any of his heirs. With it there were two equities which survived the sale, first, the right of the executor to an account and the balance of the agreed purchase money due from Dr. Christy to his father, and secondly, the right of the heirs to come in as joint holders of their father's interest on payment of their pro rata share of the purchase money paid by Dr. Christy at the orphans' court sale.

With regard to the first, the executor and Dr. Christy agreed to submit the whole matter to Alvin Evans, Esq., as referee, and this being made a rule of court, the referee filed an award, finding the sum due from Dr. Christy to his father's estate, judgment was entered upon it, and it was paid by Dr. Christy. This ended the controversy as to one half of the land, and left the legal title in Dr. Christy freed from any further equity in that behalf. It is impossible to sustain any finding of an abandonment in fact by Dr. Christy of his rights under the agreement of 1865, in the face of his express reservation of them in the agreement of 1878 acquiesced in and enforced by the executor, and conclusively established by his receipt of the amount due by award of the referee.

It is argued by appellees that this submission was unauthorized, and void as beyond the powers of the executor after the sale and after the equitable title in the land had passed to the

heirs. But this objection is founded on a misconception of what was submitted to the referee. It was not the title of the heirs remaining in the land under the agreement but the amount of money due their father's estate, which it was clearly the province of the executor to ascertain and collect. There was not then and is not now any denial that the father made the agreement of 1865, and that it was still in force was, as already said, expressly declared in the agreement of 1878, without which plaintiffs have no right at all in the land.

The agreement as to the tract of land known as the Stackhouse survey, does not seem to have been included in the reference. In fact there does not seem to have been any controversy about it needing to be referred. The agreement is not denied, nor the payment of the consideration by Dr. Christy. It was expressly reserved with the other in the agreement of 1878 and the title of Dr. Christy to an undivided half is now beyond further question. The payments by Dr. Christy in the course of the litigation with the Cambria Iron Company had no proper place in the account.

Secondly, the plaintiffs as heirs of F. X. Christy are cestuis que trust under the agreement of 1878, as was held at the previous hearing of the case in 162 Pa. 485. At the date of filing their bill, they had not paid or tendered any part of the purchase money to Dr. Christy, and the master and court below had held that this was such laches as required the bill to be dismissed. This court however, taking into consideration the facts that while no money had been paid none had been demanded, and that Dr. Christy had in his hands sufficient to fully reimburse his advances for plaintiffs, held that the latter were entitled to an account on the principles then stated. That ruling we now repeat, with the addition that the accounting must be on the basis of F. X. Christy's estate in the land having been an undivided half.

This litigation has been unduly protracted and obstructive. The conduct of appellants' testator as the learned court below said " was far from being commendable," but this, while justifying a refusal of commissions, cannot deprive him of his legal rights.

Decree reversed and account ordered to be restated in accordance with this opinion. Each party to pay its own costs in this court.