Blair et al., Appellants, *v.* Shannon et al.

Argued March 23, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles McC. Barrickman,* of *Buchanan & Barrickman,* for appellants.

*John D. Ray,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 22, 1944:

This is an appeal from a dismissal of a bill in equity. Appellants were legatees and devisees under the tenth paragraph of the last will and testament of William Shannon and as such they claimed that they were entitled to a certain interest in a "three foot vein" of coal underlying lands devised in that will and they asked for an accounting for all rents, issues and profits which may have been received by one of the appellees from the leasing, mining and sale of that coal.

Shannon, the testator, owned, inter alia, a tract of land of 230 acres. By an agreement dated February 4, 1896, he leased to the Beaver Coal and Coke Company, the "three foot vein" of coal under these acres for a term of 20 years unless terminated sooner under circumstances named in the lease. Coal in this vein was never mined under this lease, though minimum rentals as provided in the lease, were paid up to and including the year 1909. Thereafter there was complete default in the payments specified. It is admitted that the lease expired by its own terms, on February 4, 1916, which was twenty days prior to the death of William Shannon.

It is the tenth clause in Shannon's will which gives rise to this litigation. It reads as follows: "Whatever is realized out of the three foot vein of coal for which I gave a lease some years ago, I direct my executors to collect and divide the same among my eight children share and share alike".

The position taken by the appellants is that the paragraph just quoted devised in effect to the eight children of the decedent all of the coal in the three foot vein therein mentioned and that upon the mining and selling of the coal from that vein by the executors or administrators the children are entitled to share equally in the proceeds.

The defendants are (1) the widow of the testator and (2) his sons William G. Shannon, Royal G. Shannon, Haskell A. Shannon and James B. Shannon. By the 2nd and 3rd, 4th and 9th paragraphs of decedent's will these sons were devised all the real estate in fee simple owned by the testator. The "eight children" received by the 13th paragraph of the will in addition to what was bequeathed them in the 10th paragraph of the will, "whatever may remain after the payment of the above bequests" and the devises of the real estate.

The question then is: Was the coal in the three foot vein mentioned in the tenth paragraph of the will a part of the testator's real estate or a part of his personal property, at the time of his death? If it was real estate, as the court below concluded, appellants had no standing to maintain their bill in equity.

Appellees contend that "the legacy under paragraph ten being a bequest of personal property of William Shannon which disappeared before the date of his death, caused the legacy to lapse and the appellants have no rights upon which to found an action in equity". This contention the court below rightfully sustained. When Shannon leased the "three foot vein of coal" in and under the tract of land described in the agreement of February 4, 1896, his only interest in that coal became personal property. His interest in that coal as *real* property was a mere possibility of reverter. We said in *Smith v. Glen Alden Coal Co., et al.,* 347 Pa. 290, 301, 302: "This is not an estate, present or future, but merely a possibility of having a future estate" in the coal leased. We said further as to "a possibility of reverter": "In

the case of a base or qualified fee expiring by its own contingent limitation, it is a right to have the fee simple in possession contingent upon the determination of the fee defeasible. In the case of a fee limited upon a condition subsequent, it is a contingent right of re-entry upon condition broken": *Copenhaver v. Pendleton,* 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324, 331.

When this lease, as to which the rentals had been in default since 1910, inclusive, expired by its own terms on February 4, 1916 (as is admitted), Shannon then repossessed this coal *in fee simple.* From that date to the end of Shannon's life this three-foot vein of coal was a part of his *real estate.* Whether it was on that date real estate *or* personal is so material that the decision in this case must be predicated on the fact of its being one or the other, for by his will, which spoke as of the day of his death, he divided his *real estate* among three of his sons, William G., Royal G., and James B. He made provision for the other three sons and the two daughters who did not receive any real estate; by bequeathing to each of them $2500 in cash. He also made other cash bequests to his sons.

The tenth paragraph of his will referred exclusively to a legacy of personal property, which was the testator's interest in the coal lease above referred to and in the royalties arising therefrom. In the tenth paragraph the testator specifically directed his executors "to collect and divide" "whatever is realized out of the three-foot vein of coal for which" he "gave a lease some years ago". This provision clearly contemplated the devise of *personal* property, for testators do not direct the "collection" of real estate. On the day the testator died and for 20 days previously the coal in the three-foot vein had been by operation of law *real estate* and nothing else and its descent must be controlled by those provisions in the will which relate to devises of real estate. What these are we have already pointed out.

The facts in the case of *Hyde v. Rainey,* 233 Pa. 540, 82 A. 781, are wholly at variance from the facts in the

instant case. In the *Hyde* case there was *no question* raised as to whether the property in dispute was *real estate or personal property*. There had been no lease *of any kind* ever executed on the coal, gas and oil under the farm described. The only question was whether the testatrix intended by her will to give the surface of her farm to her son and to devise the minerals under the ground on the farm to her four children. It was purely a question of interpreting the words of a will, which, as the court said, "was drawn by a minister of the gospel, who, it is apparent, was not an apt draughtsman." The court said: "This case is not free from difficulty" but came to the conclusion that the testatrix intended to give the minerals under the farm to her four children. In the instant case the lease is well drawn. Nothing could be clearer than the fact that the testator expressly gave all his *real estate* to the children we have above mentioned, and that by the tenth paragraph he intended to divide among his eight children the proceeds of the lease which he had executed over twenty years previously, which had produced no royalties for over six years preceding the testator's death, and which at the time of his death was absolutely non-existent. In other words, the tenth paragraph of the will applied to only *personal* property which was non-existent at the time of the testator's death.

When a testator devises *all his real estate* to certain of his children and when by the law of this Commonwealth certain property in dispute *is* real estate, the testamentary provisions as to real estate absolutely controls the descent of that property, and no court has any right to speculate as to whether or not the testator *intended* the property in dispute to descend in any other way than his unequivocal language declared that it should descend. Judicial *speculation* as to an individual's intentions can never prevail over the unmistakable *language* of that individual's legal documents. What is said in the Statutory Construction Act of 1937, P. L.

1019, about *not disregarding* "the words of a law" which "are clear and free of all ambiguity" "under the pretext of pursuing its spirit," applies also to the construction of wills. When the words of a will are free and clear from all ambiguity, as this will is, its words should not be disregarded under the pretext of pursuing the testator's "intentions." 28 R. C. L., sec. 174, p. 215, lays down this principle "The purpose of construction, as applied to wills, is unquestionably to arrive at the intention of the testator, that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will." (Citing numerous cases.) This court said in *Groninger's Estate*, 268 Pa. 184, 187, 110 A. 465: ". . . our first duty is to examine the will, and if possible ascertain its meaning without reference to canons of construction." We have repeated this in many other opinions. In 69 Corpus Juris, sec. 1119, p. 59, is stated this principle: "The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will, or, as is sometimes said, the testator's intention must be ascertained from the four corners of the will." (Citing numerous cases.)

Presiding Judge READER of the court below succinctly and accurately summed up this case when in his opinion he said: "The tenth paragraph of the Shannon will does not pass title to the coal underlying the land as such, but disposes only of such proceeds of that coal as may be realized under the lease existing at the time the will was executed. The coal remaining unmined at the expiration of the lease, and at the death of William Shannon, passed, not under the tenth paragraph of his will, but under the other provisions thereof as part of the land therein devised."

We decide that the specific legacy made in the tenth paragraph of this will had been adeemed by the extinction before the testator's death of the personal property bequeathed, i. e., the rentals "realized out of the three-

foot vein of coal" for which the testator "gave a lease some years ago."

The decree is affirmed at appellants' cost.

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

I cannot assent to the conclusion of the majority of this Court. The issue raised on this appeal is whether the provision of the will that "Whatever is realized out of the three foot vein of coal for which I gave a lease some years ago, I direct my executors to collect and divide the same among my eight children share and share alike" is effective and vests any rights in appellants as tenants in common with appellees.

Whether the coal was real estate or personalty is immaterial to a disposition of this case. Unquestionably, it was real estate at testator's death. Upon execution of the lease for a term the law created a possibility of reverter in said coal: *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 302. This purely contingent right existed in testator during the term, and, had he died during said term, in his heirs at law. The majority opinion erroneously calls this possibility of reverter a "contingent right of reentry upon condition broken." These contingent interests are not identical and rights arising therefrom are entirely distinct. A right of reentry for condition broken is created by act of the parties; a possibility of reverter is created by operation of law. The former arises only when a condition in a deed, grant, or devise has been broken, thereby giving rise to a cause for forfeiture of the estate. A reentry upon the land must be made by the grantor or his heirs before the grantee's estate is divested. In the latter, where the estate terminates by normal expiration the law returns the original estate to the grantor or his heirs. No act is required by him; he need not enter into actual possession, as in the case of a reentry for condition broken: *Lyford v. City of Laconia*, 75 N. H. 220, 72 A. 1085, 1089; *Tiffany, Real Property*, 3rd ed., Section 314, p. 9; *Thompson, Real Property*, Sec-

tion 2116, p. 663. Upon the normal expiration of the term of the lease in question Shannon became seized in fee of the coal as fully as if no lease had ever been executed. That there was also a condition subsequent in the lease— nonpayment of rents or royalties—the breach of which created a cause for forfeiture and the right to terminate the lessee's estate by reentry for condition broken is of no effect in this case; no re-entry was ever made to effect the forfeiture. That the coal is real estate as of the date of testator's death resulted by operation of law and not reentry for condition broken.

That there can be a severance of the minerals from the surface and two distinct estates created by the provisions of a will is well established: *Hyde v. Rainey,* 233 Pa. 540, 545; *Christy v. Christy,* 162 Pa. 485. These estates may be created by implication as well as express words: *Christy v. Christy,* supra, 492.

This will must be read "to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention [appears] by the will": Act of 1917, P. L. 403, Section 9, 20 P. S. Section 221. Since the vein of coal was real estate at the time of Shannon's death and twelve days prior thereto, he must have intended it to pass under paragraph ten of his will; otherwise, a change therein would have been made by him. Where a will is being construed, all words therein must be considered and given effect if possible: *Lochrie's Estate,* 340 Pa. 145, 151. Construction is favored which will give operative effect to every word of the will rather than one which makes some words idle and negative: *Duffy's Estate,* 313 Pa. 101, 108; *Greenawalt's Estate,* 343 Pa. 413, 417; *Calder's Estate,* 343 Pa. 30, 37-8. A testator will not be presumed to have used language not intended to be effective.

The majority opinion fails to recognize that "The description [of the property] may be so broad that it fits equally the right as it existed when the will was made, and the right as it exists when testator dies": *Page,*

*Wills,* Vol. 4, p. 378. The right has not changed, although the quantum of the testator's interest has. Testator did not use the word "lease" in a technical sense, but merely *as descriptive of the vein of coal, the proceeds of which he gave to all his children, share and share alike.* Testator's language expressly described and identified the thing bequeathed or devised. This case is governed by *Hyde v. Rainey,* supra. What was there said is controlling here (p. 548): ". . . it was the intention of [testator] to give the proceeds of the minerals to [his eight] children . . . share and share alike, and this is equivalent to a devise of the absolute estate in these minerals to them."

The majority opinion speaks of ademption. "In modern law the term ademption has two distinct meanings. It is used with reference to the act of the testator in paying, to the legatee, in the lifetime of the testator, a legacy which the testator has given to the legatee by will, or in satisfying such legacy by giving, in place thereof, something of value": *Page,* op. cit. supra, p. 355. "Unfortunately, the term 'ademption' is also used to indicate the loss of the legacy by the loss or destruction of the subject-matter in the lifetime of the testator, or by the loss, transfer, or termination of the testator's interest therein before his death": *Page,* op. cit.. supra, p. 356. Clearly, this theory of the law has no application to this case. The gift here remains the same. All that appellants were entitled to receive had testator died prior to the termination of the lease were the proceeds of the coal. What they are now entitled to receive are the proceeds of the coal. "In order to carry out this intention the power to sell or lease is necessarily implied . . . as an unlimited gift of the proceeds vests in the beneficiaries an absolute estate in the corpus from which the proceeds arise . . .": *Hyde v. Rainey,* supra, 548. It is clear that testator intended all his children should receive the proceeds of the vein without regard to its status, whether it be real estate or personalty. Under *Hyde v. Rainey,*

supra, he assured their enjoyment of the same, whether he survived the term of the lease, or died prior to its termination. Any other disposition of this case does violence to the intention of testator and completely disregards the plain words of the will and is a strained construction. This Court cannot take such liberties with the plain words of the testator. Our function is not to rewrite a will (*Davis's Estate,* 346 Pa. 247, 251; *Friedheim's Estate,* 344 Pa. 542, 544) but to see that in furtherance of justice the plainly declared intention of the testator is carried out.

I would reverse the decree of the court below and remand the record to said court for further proceedings consistent with this opinion.