## Reilly Estate

*Joseph K. Coxe,* for exceptants.

*Bernard J. Duffy, Jr.,* contra.

HUNTER, J., November 26, 1954.—Paul Reilly, late husband of testatrix, sold his law practice to James J. McGinnis. Both were members of this bar. The agreement of sale, dated May 31, 1946, called for the payment by McGinnis to Reilly of 40 percent of all net fees, during a period of five years.

Reilly died June 9, 1946, a few days after the agreement, and by his will gave his entire estate to his wife, Kathryn S. Reilly.

Mrs. Reilly made her will on June 19, 1946, and gave to her friend, Gertrude King, her (testatrix's) "interest of, in and to the law practice of my late husband set forth in the agreement. . . ." She gave the residue of her estate to her sister, Ella Sydney (now Spiers).

McGinnis paid over to the Paul Reilly estate, during the five-year period of the agreement which ended May 31, 1951, sums aggregating $13,343.78, in full performance and liquidation of the agreement.

All these payments to the Paul Reilly estate were made during the lifetime of Mrs. Reilly. She died June 16, 1952.

The question is whether the above payments were an ademption of the specific legacy of testatrix's interest in the law practice of her husband.

There were other assets in the Paul Reilly estate. The inventory and appraisement shows a gross estate of $30,575.80. The account, supplemental account and schedule of distribution, contained numerous items of debit and credit, cutting down the estate to a net balance for distribution of $15,002.69 (principal and income).

The above item of gross estate, $30,575.80, included the law practice agreement at an estimated value of $15,000. The actual value of the latter, as shown by

the payments made by McGinnis, was $13,343.78.

The payments made by McGinnis were commingled with the other cash of the Paul Reilly estate. They were not segregated, we may assume, because Mrs. Reilly was sole legatee, she was still living, and her will containing the legacy would not become effective until her death.

From these commingled assets, as shown by the schedule of distribution in the Paul Reilly estate, payments in distribution were made to Mrs. Reilly in her lifetime of $10,299.87, and of $4,702.82 (principal and income) to her executrix after her death.

Whatever the source of the $10,299.87, it disappeared into the possession of Mrs. Reilly, and was consumed by her in the expenses of her illness and maintenance. If law practice money was in the above amount, it was an ademption of the legacy to that extent.

Gertrude King, exceptant, makes no claim to the $10,299.87. She does claim the above $4,702.82, the final sum paid by the Paul Reilly estate to the Kathryn S. Reilly estate, and contends that it represented money paid under the law practice agreement.

The auditing judge dismissed the claim of Gertrude King, first, because no evidence was presented to establish that the sum in question, $4,702.82, had been part of the proceeds of the Reilly-McGinnis agreement, and second, because all payments by McGinnis under that agreement had been made by 1951, in the lifetime of Mrs. Reilly, and in 1952 when she died she no longer had any interest in the law practice of her husband.

The auditing judge awarded the estate of Kathryn S. Reilly, which included the above sum of $4,702.82, to her residuary legatee, Ella Sydney Spiers.

It is clear that testatrix's bequest of "my interest of, in and to the law practice of my late husband set forth in the agreement . . ." was a specific bequest.

In McFerren Estate, 365 Pa. 490, it was said:

"A *specific legacy* has been defined as a gift by will of a specific article or part of testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing . . .

"A *specific* legacy is adeemed where the thing bequeathed was not a part of testator's estate, whether because it was sold, exchanged, or converted into another form."

In the case of Hoke v. Herman, 21 Pa. 301, the court was concerned with whether or not the legacy of a certain promissory note was adeemed pro tanto because of a partial payment of the note during testator's lifetime. The Supreme Court in that case stated there was an ademption pro tanto and, in its opinion, the court said:

"We hold therefore that if a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. *If such legacy be of a debt, payment necessarily makes an end of it.* The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, *he cannot have money in place of it.* This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator." (Italics supplied.)

Exceptant contends that the bequest in this will should be interpreted as a gift of "proceeds". A gift of the "proceeds" of specific property is not adeemed by a sale where the "proceeds" may be traced and identified among the assets of testator; Black's Estate, 223 Pa. 382; Frost Estate, 354 Pa. 223. In a gift of proceeds there is usually no gift of the thing itself,

but of its proceeds after it has been sold: Frost Estate, infra.

There is no direct gift of proceeds in the instant case. The subject matter is the law practice agreement itself, wherein the purchaser agreed to pay 40 per cent of the fees collected. In this respect the legacy of the agreement is similar to the specific legacy of a debt, bond, mortgage, life insurance policy, lease, or other obligation for the payment of money, and which is adeemed by payment of the money in the lifetime of testator: Hoke v. Herman, 21 Pa. 301, supra; Smith's Appeal, 103 Pa. 559; Pruner's Estate, 222 Pa. 179; Blair v. Shannon, 349 Pa. 550; Hill's Estate, 32 D. & C. 472.

It is true that an immaterial change in form is not an ademption. A bequest of "my right, title and interest in my business", a partnership, is not adeemed by the incorporation of the business: Gerlach Estate, 364 Pa. 207.

It is clear, however, that a conversion into money is regarded as a substantial change of form, sufficient to work an ademption. See cases last above cited.

Exceptant argues that testatrix's use of the word "interest" in the phrase " my interest of, in and to the law practice of my late husband set forth in the agreement . . . " indicates a gift of proceeds. We do not construe the word in that sense. In our opinion, it was used by testatrix to indicate that her ownership was partial, namely, 40 per cent of the fees collected.

This is not a legacy of "proceeds", and even if it were, the legatee has not traced and identified any part of such proceeds among the assets of the estate. The burden is upon the legatee to show that there is no ademption: Horn's Estate, 317 Pa. 49.

All payments under the agreement were completed in the lifetime of testatrix. The legacy does not exist in the form in which it was given by the will. There-

fore, it is adeemed, and the legatee may not have money in place of it.

The exceptions are dismissed and the adjudication is confirmed absolutely.

Shoyer, J., did not sit or participate in the decision of the court.