**Lengel  Estate**

*Ralph W. D. Levan,* for accountants.

*John W. Biehl,* for legatee.

MUTH, P. J., November 4, 1963.—Lottie N. Lengel died testate December 1, 1962, having made her last will and testament, which was dated October 20, 1959. In her will she provides for a number of pecuniary and specific legacies, the latter including real estate, furniture and shares of stock, and then directs distribution of the residue of her estate unto two of her friends in two equal shares. The residuary legatees contend that the inheritance tax due the Commonwealth of Pennsylvania should not be paid out of the residue of this estate as provided for by the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, sec. 718, and which became effective January 1, 1962, but that the inheritance tax payable to the Commonwealth be paid pursuant to the provisions of the Act of June 20, 1919, P. L. 521, as amended.

The will of decedent is silent as to the payment of transfer inheritance tax, and the scrivener of the will of testatrix stated at the audit of the account of the personal representatives of decedent that at the time the will was prepared by him for her, he explained to her that the absence of any language in her last will and testament with reference to the payment of transfer inheritance taxes would result in the payment of such tax by each individual legatee. He contends that although the will is silent with reference to the payment of inheritance tax, nevertheless, the provisions of section 718 of the Act of 1961, aforesaid, should not apply, even though that section of the act provides that unless a contrary intent appears in the will of decedent, the inheritance tax imposed by the act shall be paid out of the residue of the estate.

The Act of 1961, supra, changed the existing law with reference to the payment of transfer inheritance tax. The Joint State Government Commission, in its comment to the quoted section, states:

"This subsection changes existing law, under which the tax is payable by the legatee or out of property passing to him unless the will clearly indicates otherwise: Brown's Estate, 208 Pa. 161; Penn-Gaskell's Estate, 208 Pa. 342; Rettew's Estate, 142 Pa. Superior Ct. 335." See Gerner Estate, 29 D. & C. 2d 161, in which it was held that the will having made no provision for the payment of the inheritance tax, the tax must be paid from the residuary estate.

It will be noted that this is a complete reversal of the previously existing rule and, as a result, the enactment of the Act of 1961 places a tax clause in each testator's will or inter-vivos conveyance, unless he manifests a contrary intention: Pennsylvania Inheritance and Estate Tax, Grossman & Smith, §718-2, page 407.

The position of the residuary legatees under the will of testatrix seems to be that it was the intent of testatrix as will appear from her will that each individual legatee pay his respective transfer inheritance tax out of the legacy passing to him or her. This contention seems to be based upon the proposition that since the will, at the time it was written, would have been interpreted in accordance with the law then in existence as requiring the transfer inheritance tax to be paid out of the respective legacies, that since testatrix made no mention of how such tax be paid in her will, the provisions of the Act of 1961, therefore, do not apply to her will, but that the will should be interpreted and the obligation to pay inheritance tax be determined in accordance to the provisions of the law in existence at the time of writing of the will.

In examining the numerous cases dealing with the question as to what law applies in the interpretation

of wills, most of the cases seem to fall into different classes such as those dealing respectively, among other things, with after-acquired property, the capacity of the testator to make a will, revocation of wills by marriage or otherwise, distribution according to law, and the validity of the will by reason of the method and form of its execution. See Dwight v. Dwight, 64 R. I. 294, 12 A. 2d 227, annotated in 129 A. L. R. 855.

The issue for determination, therefore, is—has testatrix manifested a contrary intent in her will as required by section 718 of the Act of 1961? Provisions similar to the Act of 1961 are found in section 14 of the Wills Act of April 24, 1947, P. L. 89, as amended, and also in the Estates Act of 1947, Act of April 24, 1947, P. L. 100.

Section 14 of the Wills Act of 1947, supra, includes several rules for interpretation of wills, including the language "In the absence of a contrary intent appearing therein." The contrary intent in such cases generally must be found from *the probated words* and not from words which form no part of the will: Wright Estate, 380 Pa. 106. It is, of course, elementary that the intent of testator is the pole star in the construction of every will, and the question always is—what is the meaning of the words used by him? In Wright Estate, 391 Pa. 405, a legatee contended that the whole of the death taxes, state and federal, should be borne by decedent's residuary estate, whereas the residuary legatees, who were mostly charities, contended to the contrary. This case arose under the provisions of the Act of 1919. The testator, in his will, had provided for certain pecuniary and specific legacies and devises and gave the residue to two charities, Princeton College and University and the Presbyterian Hospital in Philadelphia. The court found from the will, the existence of a scheme of distribution from which the intent of testator could be determined, and pointed out that

the important inquiry in such cases is whether *the language of the will* expresses an intent. The court concluded that decedent's will clearly evidenced an intention that the preresiduary legatees and devisees were to receive their testamentary gifts without diminution for any death duties. The court stated that its construction of the will ". . . makes the whole will harmonious and accomplished the primary intent of testator . . ."

However, in a very strong dissenting opinion Justice, now Chief Justice, Bell examined the will of this decedent very closely and pointed out that the will contained no provision for pecuniary or specific gifts free or clear of all taxes nor any express tax free clause, and that, therefore, any relief from the payment of inheritance tax by a legatee must arise clearly, if at all, by plain or necessary implication from the will's provisions. He arrived at the conclusion that an analysis of the language of testator's will demonstrated beyond any doubt that testator failed either by specific language or by necessary implication to show clearly an intent to give to each individual legatee his legacy or devise free of inheritance tax. We refer to this decision because it is unusual and unique in that the court determined the intent of testator from a scheme of distribution and not from any language pertaining to or directing how the inheritance tax was to be paid. Furthermore, it would seem that the discussion as to the intent found in the dissenting opinion is probably more expressive of the law of today.

The testator's intent is usually determined from the language used in the will, and courts generally refuse to ascertain the testator's intention except from words that are used in the will. Page on Wills, §30.7 sets forth this idea as follows: "When testator's intention is expressed in oral statements which do not comply in form with the requirements of the statutes which reg-

ulate nuncupative wills, or by written declarations which are not executed in accordance with the Wills Act and which are not incorporated in the will so as to make them a part thereof, no effect can be given thereto." See, also: Sowers Estate, 383 Pa. 566, and Blair v. Shannon, 349 Pa. 550. The same idea was expressed in Shaw's Estate, 342 Pa. 182 as follows: "It is true there is no provision expressly setting forth the intended declaration of the trust, but that omission will not support an implication that a perpetual trust was created." The same problem of intent arises in determining what provision in a will is a sufficient indication that the failure to provide for an afterborn child was intentional. See Aker on Probate and Interpretation of Wills, p. 202, for the following:

"A statement in the will evidencing testator's intention that future born or adopted children are not to share in his estate is sufficient. However, such intentional failure to make any positive provision for the after-born or after-adopted child must be found in the terms of the will itself, and examination of collateral circumstances will not be permitted to show actual intent: Frank Est., 67 D. & C. 198, annotated in Fiduciary Review, April 1949. Mere silence in a will, written when testator knew his wife to be pregnant will not be sufficient: Frank Est., 67 D. & C. 198; see also M'Knight v. Read, 1. Whart. 213; Daily Est., 9 Luz. 53; Zug Est., 57 Pitts. 176. The appointment of a testamentary guardian (cf. Hollingsworth's Ap., 51 Pa. 518), provision for a 'daughter' that turns out to be a son (cf. Conn's Est., 65 Pa. Super. 511), and precatory words in a gift to the widow (cf. Walker v. Hall, 34 Pa. 483; Church Est., 37 Montg. 213) may be sufficient indication in the will itself of an intentional disinheritance so as to preclude the child from sharing in the estate: See Bregy, Intestate, Wills and Estates Acts of 1947, p. 2510."

It is to be noted that there is, in this case, absolutely no language in the will of decedent pertaining to the payment of inheritance tax. We are asked to find that it was the intent of testatrix that the transfer inheritance tax be paid by each respective legatee as would have been the situation if she had died prior to the adoption of the Transfer Inheritance Tax Act of 1961. No evidence was presented at the hearing, and we have only the statement of the scrivener as to his explanation to testatrix of the legal effect of an omission to direct the method by which inheritance tax was to be paid; from that we are asked to infer, in addition, that because of such failure, we should find it to have been the intent of this testatrix as expressed in her will that the inheritance tax was not to be paid out of the residuary estate. It is, of course, clear that scrivener's testimony as to his understanding of what testatrix intended is inadmissible: Dembinski's Estate, 316 Pa. 61; so would also evidence of testatrix's instructions to the scrivener, which would alter or add to the terms of the will: Hoffman Will, 394 Pa. 391, and Penrose's Estate, 21 D. & C. 514, affirmed 317 Pa. 444. Assuming the statement of the scrivener with reference to his explanation of the effect of the will of testatrix at the time it was written to be admissible as evidence, the question still remains—what is there in the will of testatrix which can be interpreted as evidencing a contrary intent as required by section 718 of the act aforementioned?

Counsel for the residuary legatees calls to our attention Crozer's Estate, 257 Pa. 241. In that case testator by will gave his estate "to my two sisters and three brothers absolutely." It was necessary for the court to determine whether the gift was to individuals or to a class. The opinion of the Superior Court was a per curiam opinion, and it is submitted that the facts of this case are quite dissimilar from the problem before

us. Counsel also submits for our attention Ayres Estate, 11 D. & C. 2d 383. That also was a case involving the interpretation of a will in order to determine the intention of testatrix. In substance testatrix bequeathed her residuary estate unto her next of kin in accordance with the intestate laws of Pennsylvania providing that in default in the determining of the existence of any next of kin within a definite period, the residuary estate be distributed to charity. The interpretation of the will involved the question as to whether the Intestate Act of June 7, 1917, P. L. 429, as amended, or the Intestate Act of April 24, 1947, P. L. 80, determined distribution of the estate. The court, in its opinion, referred to section 22 of the Wills Act of 1947, which, by its terms, took effect on January 1, 1948, and applied only to the wills of all persons dying on or after that day. The court then applied section 14(1) of the Act of 1947, supra, which provides that every will shall be construed to speak and take effect as if it had been executed immediately before the death of testator. It was pointed out that where a testator gives his estate to next of kin or to those entitled under the intestate laws, these classes are to be determined as of the date of death unless the will shows a clear and unequivocable intention to the contrary. It was held by the court that testatrix's will did not express an intent to be governed by the act in effect at time of the executing of the will, but that the Intestate Act of 1947, which was in effect at the time of her death, governed.

In Hood v. Pennsylvania Society to Protect Children from Cruelty, 221 Pa. 474, the court applied the law as of the date of the writing of the will in order to construe the meaning of the words "then living." All of the situations referred to by counsel are situations in which rules of construction were applied in interpreting words used in wills. We have been advised

of no authority in which the absence of any language in a will was interpreted or construed nor have we been able to find any.

Under the circumstances, therefore, there being no language in the will of testatrix which required construction, and there being no ambiguity in the terms and provisions of the will, we find that there is no contrary intention expressed by testatrix in her will with reference to the payment of inheritance tax. The scheme of distribution set forth by testatrix in her last will does not indicate any intent as to the source of payment of the transfer inheritance tax. Section 718 of the Act of 1961 applies to this estate and determines the liability for the payment of the inheritance tax. The tax is to be paid out of the residuary estate.